CARTER et al., Appellants,

v.

CONSOLIDATED RAIL CORPORATION et al., Appellees.

[Cite as *Carter v. Consol. Rail Corp.* (1998), 126 Ohio App.3d 177.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE08–990.

Decided Feb. 10, 1998.

178

*Colley, Shroyer & Abraham Co., L.P.A., Michael F. Colley, David I. Shroyer* and *David K. Frank,* for appellants.

*Zeiger & Carpenter, Michael H. Carpenter* and *Daniel R. Mordarski; Eckert, Seamans, Cherin & Mellott, LLC, Thomas J. Sweeney* and *Timothy S. Coon,* for appellee General Motors Corporation, Electro–Motive Division.

CLOSE, Judge.

This is an appeal from the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, General Motors Corporation, Electro–Motive Division ("GMC"), on a claim of negligence based upon product strict liability by plaintiffs-appellants, Carina Carter and Steven Korpieski. Summary judgment was based on federal law preemption by the Locomotive Boiler Inspection Act ("LBIA"), Section 23, Title 45, U.S.Code and/or the Federal Railroad Safety Act ("FRSA"), Section 20106, Title 49, U.S.Code (formerly Section 434, Title 45, U.S.Code).

Appellants bring two assignments of error:

"Assignment of Error No. 1:

"The trial court erred, to the prejudice of the appellants, in rendering summary judgment in favor of appellee General Motors Corporation ('GM') and in dismissing the appellants' state law tort claims against GM on the basis that such claims were preempted by the Locomotive Boiler Inspection Act.

"Assignment of Error No. 2:

"The trial court erred, to the prejudice of the appellants, in rendering summary judgment in favor of appellee General Motors Corporation ('GM') and in dismissing all of the state law claims against GM, on the basis that the appellants' state tort claims were preempted by the Federal Railroad Safety Act ('FRSA')."

On November 3, 1992, around 7:00 p.m., four teenagers (Silas Korpieski, Brian Marshall, Bryan Cook, and a fourth individual) were travelling in a car on Davidson Road in Franklin County, Ohio. Brian Marshall, the driver of the car, approached a railroad crossing on Davidson Road and stopped before reaching the tracks. The crossing warning lights were activated, warning motorists of an approaching train. The car containing the four teenagers proceeded across the tracks into the path of a train that was owned and operated by Consolidated Rail Corporation ("Conrail"). A collision occurred, killing three of the teenagers and severely injuring the fourth, Silas Korpieski.

The locomotive engine was manufactured by GMC and sold to Conrail in 1984. Appellants brought an action against GMC alleging product strict liability claims. Appellants asserted that the locomotive was defective because it should have been equipped with supplemental warning lights to assist a motorist in seeing an approaching train at night. On GMC's motion for summary judgment, the trial court found that the LBIA preempts the locomotive field and that Congress intended to subsume the subject matter of external lights. Appellants' state-law tort claims, grounded on product strict liability, alleged that the locomotive was defective because it did not have adequate visual or audible warning devices. The trial court found appellants' claims preempted by federal law. Appellants later dropped the product strict liability claim that alleged that the subject locomotive was defective because it did not install adequate audible warning devices.

The judgment entry, which was filed on February 25, 1997, held that "all claims brought against General Motors * * * are dismissed with prejudice." The journal entry, however, made an express determination that it was not a final appealable order. It became appealable on July 7, 1997, following the settlement of the remaining claims pending against the other defendants: Conrail; Michael Fitzgerald, the locomotive engineer; and Roy B. Tinch, the locomotive conductor. On that date, the trial court filed a dismissal entry "dismissing all claims pending * * * with prejudice."

Summary judgment is proper if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Summary judgment is a procedural device designed to terminate litigation at an early stage when resolution of factual disputes is unnecessary. It must, however, be awarded with caution, resolving all doubts and construing the evidence against the moving party, and granted only when it appears from the evidentiary material that

reasonable minds can reach only an adverse conclusion about the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 605 N.E.2d 936. When reviewing the grant of a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411.

In a summary judgment motion, the burden of establishing that no genuine issue of material fact exists falls upon the moving party. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Once a proper summary judgment motion is made, the nonmoving party must produce evidence on any issue for which it bears the burden of production at trial and on any issue for which the moving party has met its initial burden. See *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, and *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 623 N.E.2d 591.

Appellant's first assignment of error asks whether a state law tort claim premised on strict product liability that alleges that a locomotive is defective for failure to install extrastatutory visual warning devices is preempted as a matter of law by the LBIA. If preempted, then no genuine issues of material fact exist and the moving party, as a matter of law, is entitled to summary judgment.

 The Supremacy Clause of the United States Constitution provides that "the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Clause 2, Article VI, United States Constitution. Pursuant to the Supremacy Clause, Congress possesses the power to preempt state law. *Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d 62, 68, 684 N.E.2d 648. In addition, " '[p]re-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.' " *Id.* at 68, 684 N.E.2d at 653, quoting *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 259, 626 N.E.2d 85, 89.

 Federal preemption of state law can occur in essentially three instances: (1) where Congress expressly preempts state law (express preemption), (2) where Congress has occupied the entire field (field preemption), or (3) where there is an actual conflict between federal and state law (conflict preemption). Field and conflict preemption are both forms of implied preemption. *Minton*, 80 Ohio St.3d at 69, 684 N.E.2d at 654. Implied conflict preemption can occur in essentially two instances: (1) where it is impossible to comply with both state and federal requirements, or (2) where state law obstructs congressional objectives. *Id.* at 77, 684 N.E.2d at 659–660.

■ In the absence of explicit statutory language preempting state law, preemption should be strictly construed in favor of finding against preemption. "In the interest of avoiding unintended encroachment on the authority of the States * * *, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." *CSX Transp., Inc. v. Easterwood* (1993), 507 U.S. 658, 663–664, 113 S.Ct. 1732, 1732, 123 L.Ed.2d 387, 396. The critical question in any preemption analysis is whether Congress intended state law to be superseded by federal law. *Minton*, 80 Ohio St.3d at 69, 684 N.E.2d at 654.

■ When the federal government completely occupies a given field or an identifiable portion of it, the test of preemption is whether " 'the matter on which the state asserts the right to act is in *any way* regulated by the Federal Act.' " (Emphasis *sic.*) *Burlington N. RR. Co. v. Connell* (E.D.Wash.1993), 811 F.Supp. 1459, 1465, quoting *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm.* (1983), 461 U.S. 190, 212–213, 103 S.Ct. 1713, 1726–1727, 75 L.Ed.2d 752, 770–771.

■ Appellants claim that GMC was negligent in its design of the train in question because it was not equipped with certain visual warning devices above and beyond those devices required by federal law. A state may not impose liability, however, for failure to install a part or attachment of a locomotive if it is within the scope of the authority delegated to the Secretary of Transportation to prescribe the same part or attachment. *Marshall v. Burlington N., Inc.* (C.A.9, 1983), 720 F.2d 1149, 1152.

In 1926, the United States Supreme Court, in *Napier v. Atlantic Coast Line RR. Co.* (1926), 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432, addressed the issue of statutory construction and whether the LBIA occupied the field of regulating locomotive equipment, thus precluding state legislation. The court found that the federal and state statutes were directed to the same subject—the equipment of locomotives—stating that "they operate upon the same object." *Id.* at 612, 47 S.Ct. at 210, 71 L.Ed. at 439. The matter on which the state asserted the right to act was regulated by the LBIA.

"The fact that the Commission has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the act delegating the power. We hold that state legislation is precluded, because the Boiler Inspection Act, as we construe it, was intended to occupy the field. The broad scope of the authority conferred upon the Commission leads to that conclusion." *Id.* at 613, 47 S.Ct. at 210, 71 L.Ed. at 439.

The power that was originally conferred on the Interstate Commerce Commission ("ICC") was, in 1996, transferred to the Secretary of the Department of Transportation by the Department of Transportation Act.

The LBIA, Section 23, Title 45, U.S.Code, provides:

"It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb * * *."

At the time appellants filed the complaint, the LBIA was codified within Sections 1 to 43, Title 45, U.S.Code. LBIA was retransferred and recodified at Sections 20301 to 20306 and 20701 to 20903, Title 49, U.S.Code as of July 5, 1994.

■ The LBIA provides exclusive federal authority to regulate the design, construction and material of every part of the locomotive and tender as well as all appurtenances. *Napier*, 272 U.S. at 611, 47 S.Ct. at 209, 71 L.Ed. at 438. The LBIA preempts any state law that regulates locomotive equipment because the LBIA was enacted with the congressional intent to occupy the field of locomotive equipment.

■ When field preemption has been found, there is no need for legislative intent specifically directed at tort law, product liability claims, or any other particular type of state regulation. When state law is preempted, the claims that depend on it are necessarily precluded. *Id.* at 613, 47 S.Ct. at 210, 71 L.Ed. at 439.

■ Imposing liability requires a finding of a duty and of a breach of that duty. Common-law damage actions are premised on the existence of a legal duty and, therefore, they impose requirements or prohibitions subject to preemption. *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 522, 112 S.Ct. 2608, 2620–2621, 120 L.Ed.2d 407, 426. Appellants' state-law tort claims would result in the imposition of a duty to install certain types of equipment on locomotives such as reflective material, oscillating lights, strobe lights and/or ditch lights. The actual effect would be one of regulating the preempted field of locomotive equipment, which is within the scope of the Secretary of the Department of Transportation's authority to prescribe.

"[T]he common law was preempted under the BIA. It is within the scope of the Secretary's authority to prescribe reflective materials or strobe, ditch or oscillating lights for locomotives, and any state regulation is therefore preempted." *Springston* v. *Consol. Rail Corp.* (N.D.Ohio 1994), 863 F.Supp. 535, 541, affirmed (C.A.6, 1997), 130 F.3d 241.

■ In the present case, GMC's duty is to comply with federal regulations and standards concerning design, material and construction of locomotive equipment. It is undisputed in the trial court that the locomotive involved in this accident did comply with all federal regulations at the time of its manufacture. Therefore, no evidence of a "breach" of any duty established by LBIA existed as to GMC.

States are precluded from imposing additional duties in the field of locomotive equipment and design. GMC was not under a legal duty to design or equip the locomotive in the manner in which appellants claim it should have been equipped. Furthermore, the different state requirements would burden interstate commerce and obstruct the intent of Congress to provide a nationally uniform standard of regulating locomotive equipment.

"It is clear that Congress intended to provide a nationally uniform standard of regulating locomotive equipment. If each state is permitted to make its own decisions with respect to such items as reflective materials, oscillating, strobe and ditch lights, such goal would be compromised." *Springston*, 863 F.Supp. at 541.

The trial court correctly concluded that GMC was entitled to judgment as a matter of law because GMC's state-law tort claims are preempted by the LBIA. We, therefore, affirm the trial court's finding that appellants' state-law claims, with regard to the locomotive equipment, are preempted by the LBIA.

Appellants' first assignment of error is overruled.

Appellants' second assignment of error asks whether the product defect claims against GMC are preempted by the FRSA, Sections 20101 to 20144, Title 49, U.S.Code. Although the LBIA clearly preempts appellants' claim, the FRSA provides a separate and independent basis for the conclusion reached by the trial court that appellants' claims against GMC are preempted.

The FRSA, Section 434, Title 45, U.S.Code (recodified as Section 20106, Title 49, U.S.Code), provides:

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

The preemption clause of the FRSA expressly preempts any state "law, rule, regulation, order or standard relating to railroad safety." *Easterwood,* 507 U.S. at 664, 113 S.Ct. at 1737, 123 L.Ed.2d at 396. In *Easterwood,* the court specifically addressed the preemptive effect of the FRSA on common-law tort claims, holding that "legal duties imposed on railroads by the common law fall within the scope of these broad phrases." *Id.* at 664, 113 S.Ct. at 1737, 123 L.Ed.2d at 396–397; cf. *Cipollone,* 505 U.S. at 522, 112 S.Ct. at 2620–2621, 120 L.Ed.2d at 426. The primary purposes of the FRSA are to promote safety in all areas of railroad operation, to reduce railroad accidents, and to achieve national uniformity of railroad safety regulations. H.R. 91–1194, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News, 4104, 4109, 4116–4117.

Two inquiries are required in deciding whether the FRSA preempts a state-law claim. The first is whether the federal government has instituted regulations that cover the subject matter on which a state claim is based. Second, if such regulations exist, then the state claim is preempted unless it falls under the "local safety hazard" exception. The state requirement can continue in force only when three conditions are met: (1) it addresses a local safety hazard, (2) it is not incompatible with a federal regulation, and (3) it does not unreasonably burden interstate commerce.

Section 229.125, Title 49, C.F.R., Headlights, provides:

"(a) Each lead locomotive used in road service shall have a headlight that produces at least 200,000 candela. * * *

"(b) Each locomotive or locomotive consist used in yard service shall have two headlights * * *.

"(c) Headlights shall be provided with a device to dim the light."

The FRSA (and rules promulgated at Section 229.125, Title 49, C.F.R.) covered the subject matter of external train lights and, therefore, appellant's state-law claim was preempted under the FRSA pursuant to the preemption provision in that federal legislation.

Appellants have attempted to redefine the relevant issue to avoid the preemptive effect of the FRSA by arguing that the issue is really about locomotive conspicuousness and about what external lights a locomotive should have, as opposed to what lights a locomotive is required to have by federal law. The FRSA does not subsume, replace, or recodify any acts. *Marshall,* 720 F.2d at 1153. Furthermore, national uniformity would be undermined if the FRSA were read to repeal preemption under the LBIA.

"This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines. Locomotives are designed to travel long

distances, with most railroad routes wending through interstate commerce. The virtue of uniform national regulation 'is self evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state.'" *Law v. Gen. Motors Corp.* (1997), 114 F.3d 908, 910.

The extensive authority granted to the federal government to regulate the railroad industry, as evidenced by the sweeping powers granted in the LBIA and enhanced by the FRSA (enacted in 1970), has supported the well-settled view that Congress intended federal law to occupy the field of locomotive equipment and safety.

The trial court correctly concluded that GMC was entitled to judgment as a matter of law. Appellants' state-law tort claim is preempted by the FRSA.

Appellants' second assignment of error is overruled.

Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN and LAZARUS, JJ., concur.