NORFOLK SOUTHERN RAILWAY COMPANY, Appellant,

v.

BOGLE et al., Appellees.

[Cite as *Norfolk S. Ry. Co. v. Bogle*, 166 Ohio App.3d 449, 2006-Ohio-1540.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86339.

Decided March 30, 2006.

450

Gallagher, Sharp, Fulton & Norman, Kevin C. Alexandersen, Colleen A. Mountcastle, and Holly M. Olarczuk–Smith, for appellant.

Brent Coon & Associates, Christopher J. Hickey, Carolyn K. Ranke, Mary Brigid Sweeney, and Gary J. Maxwell, for appellees.

COLLEEN CONWAY COONEY, Presiding Judge.

{¶ 1} Plaintiff-appellant, Norfolk Southern Railway Company ("Norfolk"), appeals the trial court's decision denying its request for declaratory relief and finding that Am.Sub.H.B. No. 292 ("H.B. 292") is preempted by the Federal Employer's Liability Act ("FELA"), Section 51 et seq., Title 45, U.S.Code, and/or the Locomotive Boiler Inspection Act ("LBIA"), as amended, Section 20701 et seq., Title 49, U.S.Code. Finding no merit to the appeal, we affirm.

{¶ 2} Between September 1999 and March 2004, defendants-appellees, Charles Odell Weldon and Eric A. Wiles, individually and in his capacity as executor of the estate of Larry Arnold Wiles, deceased (collectively "appellees"), filed claims against Norfolk alleging injuries caused by occupational exposure to various products, including those containing asbestos, during the course and scope of their employment with Norfolk.[1] Appellees brought these causes of action under the FELA and LBIA.

---

1. Defendants-appellees, Homer Bogle and William H. Monroe Jr., as administrator of the estate of Worth Oliver Bryant, were voluntarily dismissed from this appeal.

{¶ 3} On September 13, 2004, Norfolk filed a complaint for declaratory judgment concerning the above pending cases. Norfolk requested a declaratory judgment to declare that (1) the newly enacted H.B. 292, effective September 2, 2004, applied to those pending cases, and (2) that H.B. 292 did not infringe on the Supremacy Clause of the United States Constitution.

{¶ 4} Following various procedural motions and an oral hearing, the trial court denied the relief sought by Norfolk by declaring that H.B. 292 did not apply to FELA/LBIA cases because it was preempted by federal law.

{¶ 5} Norfolk appeals this decision, raising three assignments of error, which will be addressed together.

## Standard of Review

{¶ 6} The issue before us is whether the application of H.B. 292 to asbestos claims arising under the FELA and/or LBIA infringes on the Supremacy Clause of the United States Constitution and thus is preempted by federal law. This issue is a question of law. Accordingly, we apply a de novo standard of review without deference to the trial court's decision on this issue. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835; *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889.

## H.B. 292: Applicability to the FELA and/or LBIA

{¶ 7} In its first and second assignments of error, Norfolk argues that the trial court erred as a matter of law by declaring that H.B. 292 ("the Act") does not apply to asbestos claims arising under the FELA and/or LBIA because the plain language of the Act demonstrates that it was intended to apply to all asbestos cases filed in the state courts of Ohio. It further argues that the Act is procedural in application, rather than substantive, and, thus, it does not infringe on the Supremacy Clause and is not preempted by federal law.

{¶ 8} In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319. To determine the legislative intent, a court must look to the language of the statute. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 104, 65 O.O.2d 296, 304 N.E.2d 378. Words used in a statute are to be given their usual, normal, and customary meaning. *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 173, 661 N.E.2d 1049. Further, unless a statute is ambiguous, the court must give effect to the plain meaning of a ·statute. *Id.*

{¶ 9} The preemption doctrine arises out of the Supremacy Clause of the United States Constitution, which provides that the laws of the United States shall be "the supreme Law of the Land; and the Judges in every State shall be

bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Article VI, United States Constitution. Therefore, pursuant to the Supremacy Clause, Congress possesses the power to preempt state law. *Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d 62, 68, 684 N.E.2d 648. Moreover, " 'pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.' " Id., quoting *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 260, 626 N.E.2d 85.

{¶ 10} Federal preemption of state law can occur where Congress has occupied the entire field (field preemption) or where there is an actual conflict between federal and state law (conflict preemption). *Carter v. Consol. Rail Corp.* (1998), 126 Ohio App.3d 177, 181, 709 N.E.2d 1235. Field and conflict preemption are both forms of implied preemption. Id., citing *Minton*, 80 Ohio St.3d at 69, 684 N.E.2d 648.

{¶ 11} Absent express statutory language preempting state law, preemption should be strictly construed in favor of finding against preemption. "In the interest of avoiding unintended encroachment on the authority of the States * * *, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." *CSX Transp., Inc. v. Easterwood* (1993), 507 U.S. 658, 663–664, 113 S.Ct. 1732, 123 L.Ed.2d 387. The critical question in any preemption analysis is whether Congress intended state law to be superseded by federal law. *Minton*, 80 Ohio St.3d at 69, 684 N.E.2d 648.

{¶ 12} However, when the federal government completely occupies a given field or an identifiable portion of it, the test of preemption is whether " 'the matter on which the state asserts the right to act is in any way regulated by the Federal Act.' " *Carter*, 126 Ohio App.3d at 182, 709 N.E.2d 1235, quoting *Burlington N. RR. Co. v. Connell* (E.D.Wash.1993), 811 F.Supp. 1459, 1465. See, also, *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.* (1983), 461 U.S. 190, 212–213, 103 S.Ct. 1713, 75 L.Ed.2d 752.

{¶ 13} In the seminal case of *Napier v. Atlantic Coast Line RR. Co.* (1926), 272 U.S. 605, 613, 47 S.Ct. 207, 71 L.Ed. 432, the United States Supreme Court held that Congress, through the LBIA, intended the federal government to occupy the field of locomotive safety. The LBIA was enacted to protect employees and the traveling public from defective locomotive equipment. *Urie v. Thompson* (1949), 337 U.S. 163, 188, 190–191, 69 S.Ct. 1018, 93 L.Ed. 1282. The LBIA imposes an absolute duty on interstate railroads to provide safe equipment and subjects railroads to FELA suits by their employees for LBIA violations. Id. at 189, 69 S.Ct. 1018, 93 L.Ed. 1282.

{¶ 14} Addressing the breadth of the federal government's authority under the LBIA, the Supreme Court found it extended "to the design, the construction and the material of every part of the locomotive and tender and all appurtenances." *Seaman v. A.P. Green Industries* (2000), 184 Misc.2d 603, 604, 707 N.Y.S.2d 299, quoting *Napier*, 272 U.S. at 611, 47 S.Ct. 207, 71 L.Ed. 432. The field preemption of the LBIA applies not only to state legislative regulation, but also to state tort claims. Id., at 605, 707 N.Y.S.2d 299. The LBIA preempts any state law that regulates locomotive equipment because the LBIA was enacted with the congressional intent to occupy the field of locomotive equipment and safety, particularly as it relates to injuries suffered by railroad workers in the course of their employment. *Law v. Gen. Motors Corp.* (C.A.9, 1997), 114 F.3d 908, 910.

{¶ 15} Ohio and other jurisdictions have held that the LBIA preempts state tort actions brought by railroad employees injured by exposure to asbestos-containing locomotive components against railway companies and manufacturers. *Darby v. A–Best Products Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117; *Seaman*, supra; *Scheiding v. Gen. Motors Corp.* (2000), 22 Cal.4th 471, 93 Cal.Rptr.2d 342, 993 P.2d 996; *In re West Virginia Asbestos Litigation* (2003), 215 W.Va. 39, 592 S.E.2d 818. Therefore, the FELA and/or the LBIA entirely preempts the field of locomotive safety and bars state tort claims, including those related to asbestos injuries.

{¶ 16} When field preemption has been found, there is no need for legislative intent specifically directed at tort law, product-liability claims, or any other particular type of state regulation. *Carter*, 126 Ohio App.3d at 183, 709 N.E.2d 1235. When state law is preempted, the claims that depend on it are necessarily precluded. Id., citing *Napier*, 272 U.S. at 613, 47 S.Ct. 207, 71 L.Ed. 432. Therefore, it is not required that the General Assembly expressly exclude or include FELA and/or LBIA claims from the Act, because those claims are necessarily precluded.

{¶ 17} Instead of state tort claims, injured railroad workers asserting injury under the LBIA must bring their claims under the FELA. *Seaman*, 184 Misc.2d at 605, 707 N.Y.S.2d 299, citing *Wabash R. Co. v. Hayes* (1914), 234 U.S. 86, 34 S.Ct. 729, 58 L.Ed. 1226. "Whether a locomotive is off-line in a repair shop or moving interstate, the LBIA preempts state tort law, and the FELA replaces it in the railroad workplace environment." *Darby v. A–Best Products Co.*, Cuyahoga App. No. 81270, 2002-Ohio-7070, 2002 WL 31839197, affirmed, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117.

{¶ 18} "One of the purposes of the FELA was to 'create uniformity throughout the Union' with respect to railroads' financial responsibility for injuries to their

employees." *Hess v. Norfolk S. Ry. Co.*, 106 Ohio St.3d 389, 2005-Ohio-5408, 835 N.E.2d 679, ¶ 18, quoting *Norfolk & W. Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 493, 100 S.Ct. 755, 62 L.Ed.2d 689. "The Supreme Court has long emphasized that uniform application of the FELA is 'essential to effectuate its purposes' and that 'state laws are not controlling in determining what the incidents of this federal right shall be.'" Id., quoting *Dice v. Akron, Canton & Youngstown RR. Co.* (1952), 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398.

{¶ 19} FELA cases may be brought, at plaintiff's option, in federal court or in state court. Section 56, Title 45, U.S.Code. Therefore, "as a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *Hess*, supra, at ¶ 18, quoting *St. Louis Southwestern Ry. Co. v. Dickerson* (1985), 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303. Therefore, it is clear that the FELA and/or the LBIA preempts any state law that is deemed substantive. However, the Act may be applicable to the federal claims if the Act is procedural in nature. Fortunately, we need not address the issue of whether the overall application of the Act is procedural or substantive because even if we deemed it procedural, which we reserve for discussion at a later date, a substantive right under federal law cannot be lessened or destroyed by a state rule of practice. *Norfolk S. RR. Co. v. Ferebee* (1915), 238 U.S. 269, 35 S.Ct. 781, 59 L.Ed. 1303. The Supreme Court acknowledged that the extent to which the rules of practice and procedure may "dig" into substantive rights is "troublesome." *Brown v. W. Ry. of Alabama* (1949), 338 U.S. 294, 296, 70 S.Ct. 105, 94 L.Ed. 100. The court further noted the impossibility of laying down a precise rule to distinguish "substance" from "procedure." Id. Therefore, we must look at the application of the Act to determine its effect on asbestos claims filed under FELA and/or the LBIA.

{¶ 20} The Act, as codified at R.C. 2307.91 et seq., took effect on September 2, 2004. It reformed asbestos litigation in Ohio by establishing a uniform process for asbestos claimants to use in advancing their claims. The General Assembly, in enacting the Act, stated the following goals:

(1) give priority to those asbestos claimants who can demonstrate actual physical harm or illness caused by exposure to asbestos; (2) fully preserve the rights of claimants who were exposed to asbestos to pursue compensation should those claimants become impaired in the future as a result of such exposure; (3) enhance the ability of the state's judicial systems and federal judicial systems to supervise and control litigation and asbestos-related bankruptcy proceedings; and (4) conserve the scarce resources of the defendants to allow compensation of cancer victims and others who are physically impaired

by exposure to asbestos while securing the right to similar compensation for those who may suffer physical impairment in the future.

Am.Sub.H.B. 292, Section 3(B).

{¶ 21} To maintain a tort action under R.C. 2307.92, a claimant must file, within 30 days of filing his action, "a written report and supporting test results constituting prima facie evidence of the exposed person's physical impairment that meets the minimum requirements" of the applicable section of R.C. 2307.92. See R.C. 2307.93(A)(1). However, if the claim was pending prior to the effective date of the Act, then the written report is required to be filed within 120 days following the effective date of the Act. R.C. 2307.93(A)(2).

{¶ 22} In the instant case, appellees' claims were pending prior to the effective date of the Act; thus the "post-complaint" report was required to be filed by January 3, 2005. Failure to file the required report results in an administrative dismissal of the claim without prejudice. R.C. 2307.93(C). However, the case may be reinstated once the plaintiff makes a prima facie showing that meets the minimum requirements specified in the applicable section under R.C. 2307.92.

{¶ 23} The applicable section in the instant case is R.C. 2307.92(B), an asbestos claim based on a nonmalignant condition. R.C. 2307.92(B) provides that before a claimant can maintain a tort action under this section, the prima facie showing/report must include "that the exposed person has a physical impairment, that the physical impairment is a result of a medical condition, and that the person's exposure to asbestos is a substantial contributing factor to the medical condition." That prima facie showing shall include all of the following minimum requirements:

(1) Evidence verifying that a competent medical authority has taken a detailed occupational and exposure history of the exposed person from the exposed person or, if that person is deceased, from the person who is most knowledgeable about the exposures that form the basis of the asbestos claim for a nonmalignant condition, including all of the following:

(a) All of the exposed person's principal places of employment and exposures to airborne contaminants;

(b) Whether each principal place of employment involved exposures to airborne contaminants, including, but not limited to, asbestos fibers or other disease causing dusts, that can cause pulmonary impairment and, if that type of exposure is involved, the general nature, duration, and general level of the exposure.

(2) Evidence verifying that a competent medical authority has taken a detailed medical and smoking history of the exposed person, including a

thorough review of the exposed person's past and present medical problems and the most probable causes of those medical problems;

(3) A diagnosis by a competent medical authority, based on a medical examination and pulmonary function testing of the exposed person, that all of the following apply to the exposed person:

(a) The exposed person has a permanent respiratory impairment rating of at least class 2 as defined by and evaluated pursuant to the AMA guides to the evaluation of permanent impairment.

(b) Either of the following:

(i) The exposed person has asbestosis or diffuse pleural thickening, based at a minimum on radiological or pathological evidence of asbestosis or radiological evidence of diffuse pleural thickening. The asbestosis or diffuse pleural thickening described in this division, rather than solely chronic obstructive pulmonary disease, is a substantial contributing factor to the exposed person's physical impairment, based at a minimum on a determination that the exposed person has any of the following:

(I) A forced vital capacity below the predicted lower limit of normal and a ratio of FEV1 to FVC that is equal to or greater than the predicted lower limit of normal;

(II) A total lung capacity, by plethysmography or timed gas dilution, below the predicted lower limit of normal;

(III) A chest x-ray showing small, irregular opacities (s,t) graded by a certified B-reader at least 2/1 on the ILO scale.

(ii) If the exposed person has a chest x-ray showing small, irregular opacities (s,t) graded by a certified B-reader as only a 1/0 on the ILO scale, then in order to establish that the exposed person has asbestosis, rather than solely chronic obstructive pulmonary disease, that is a substantial contributing factor to the exposed person's physical impairment the plaintiff must establish that the exposed person has both of the following:

(I) A forced vital capacity below the predicted lower limit of normal and a ratio of FEV1 to FVC that is equal to or greater than the predicted lower limit of normal;

(II) A total lung capacity, by plethysmography or timed gas dilution, below the predicted lower limit of normal.

R.C. 2307.92(B).

{¶ 24} Failure to make such a prima facie showing results in an administrative dismissal until such time that the plaintiff can make such showing. Consequently, a claimant asserting a cause of action under the FELA and/or LBIA in an Ohio state court would be precluded from proceeding on his cause of action until

he files this mandated postcomplaint report making the requisite prima facie showing. No other state, except Georgia, has such a requirement.[2]

{¶ 25} It has clearly been decided that a federal right cannot be defeated by the forms of local practice. *Brown,* 338 U.S. at 297, 70 S.Ct. 105, 94 L.Ed. 100. This rule has been held to apply to FELA cases. Id., citing *Reynolds v. Atlantic Coast Line RR. Co.* (1949), 336 U.S. 207, 69 S.Ct. 507, 93 L.Ed. 618. Strict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws. Id. " 'Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.' " *Brown,* 338 U.S. at 298–299, 70 S.Ct. 105, 94 L.Ed. 100, quoting *Davis v. Wechsler* (1923), 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143. "Should this Court fail to protect federally created rights from dismissal because of over-exacting local requirements for meticulous pleadings, desirable uniformity in adjudication of federally created rights could not be achieved." *Brown,* 338 U.S. at 299, 70 S.Ct. 105, 94 L.Ed. 100, citing *Brady v. S. Ry. Co.* (1943), 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239. "Peculiarities of local law may not gnaw at rights rooted in federal legislation." *S. Buffalo R. Co. v. Ahern* (1953), 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395, citing *Am. Ry. Express Co. v. Levee* (1923), 263 U.S. 19, 21, 44 S.Ct. 11, 68 L.Ed. 140.

{¶ 26} In the instant case, the Act requires that claimants seeking to bring a claim for injury allegedly from asbestos exposure submit a report after their initial claim is filed. The new Ohio requirement precludes the FELA/LBIA claimants from proceeding on their claims until filing the report satisfying the requirements of R.C. 2307.92 et seq. We hold that this requirement would "gnaw" at the FELA/LBIA claimants' substantive rights to assert a cause of action under federal law in a state court. FELA claimants would essentially be indefinitely precluded from asserting their federal rights until they complied with these requirements. This would not further Congress's intent of creating "uniformity throughout the Union with respect to railroads' financial responsibility for injuries to their employees." *Liepelt,* 444 U.S. at 493, 100 S.Ct. 755, 62 L.Ed.2d 689.

{¶ 27} Norfolk argues that federal courts employ a procedure similar to the Act to prioritize and administratively dismiss FELA asbestos claims. Therefore, Norfolk claims that if the FELA actions at issue had been filed in federal court, appellees would have been subject to similar procedural requirements. Norfolk

---

2. In 2005, Georgia passed legislation requiring asbestos claimants to file a similar report before proceeding on the merits of their claims. No appellate decisions have been rendered interpreting those statutes. Georgia's statutes contain language similar to the Ohio Act.

points to the Administrative Order No. 8 of the United States District Court Judge Charles R. Weiner, filed January 16, 2002, which implemented a prioritization and administrative dismissal process for FELA cases. A cursory reading reveals that the order provides that a doctor-patient medical report setting forth an asbestos-related disease is required. However, we have no evidence before us demonstrating or identifying what requirements the report must include. The order provides:

1. [a]ll non-malignant, asbestos related, personal-injury cases assigned to MDL 875 which were initiated through a mass-screening shall be subject to administrative dismissal without prejudice and with the tolling of all applicable statute of limitations.

  \* \* \*

3. Any party may request reinstatement to active status of a case by filing with the Court a request for reinstatement together with an affidavit setting forth the facts that qualify the case for active processing. \* \* \* The burden at any hearing to reinstate shall be upon the plaintiff to show some evidence of asbestos exposure and evidence of an asbestos-related disease. Exposure to specific products shall not be a requirement for reinstatement.

{¶ 28} Clearly, the mandates that this administrative order imposes on a FELA plaintiff are not as detailed and stringent as those required under R.C. 2307.92(B). Therefore, contrary to Norfolk's assertion, appellees would not have been subject to the same administrative dismissal and reinstatement process had they filed their claims in federal court. Accordingly, we conclude that the Act, as applied to FELA/LBIA claimants, is not merely procedural, as it might preclude claimants from vindicating a substantive right to bring a claim under FELA/LBIA. Moreover, federal law preempts the entire field of locomotive safety, including asbestos-related injury claims.

{¶ 29} Norfolk makes a policy argument as its final assignment of error. Norfolk argues that if we exclude FELA actions from the application of the Act, certain fundamental rights of the FELA defendants will be infringed upon, including the rights of contribution and indemnification. We hold that this argument is not ripe for our review because the FELA defendants have not suffered any infringement of their rights concerning indemnification or contribution. Although we understand the proactive argument raised by Norfolk, we hold that such policy arguments are better suited for the General Assembly. Nevertheless, in *Hess,* the Ohio Supreme Court held that the proper measure of damages under the FELA is governed by federal law rather than state law. Therefore, any indemnification or contribution sought by Norfolk should be pursued under the jurisdiction of federal law. The Act would seemingly have no application or effect.

{¶ 30} Therefore, we hold that the application of H.B. 292 to asbestos claims arising under the FELA and/or the LBIA infringes on the Supremacy Clause of the United States Constitution and thus is preempted by federal law. Accordingly, Norfolk's assignments of error are overruled.

Judgment affirmed.

KILBANE and McMONAGLE, JJ., concur.