Petition for Writ of Mandamus Denied and Opinion filed December 19, 2006








Petition
for Writ of Mandamus Denied and Opinion filed December 19, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00625-CV

____________

 

IN RE GLOBAL SANTA FE CORPORATION, Relator

 

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I O N

In this
original proceeding, relator GlobalSantaFe Corporation (AGSF@) challenges an order signed by
respondent, the Honorable Tracy Christopher, presiding judge of the 295th 
Judicial District Court, the silica multidistrict litigation pretrial court (AMDL pretrial court@), in which real party=s Jones Act claims were remanded to
the 55th Judicial District Court of Harris County.  GSF claims that the MDL
pretrial court must retain the case pursuant to chapter 90 of Texas=s Civil Practice and Remedies Code. 
For the reasons set forth below, we deny GSF=s petition for a writ of mandamus.  








Background

On May
29, 2003, real party in interest John Lopez filed his Jones Act[1]
claims in the 55th District Court against GSF, alleging that it had failed to
provide a safe and seaworthy vessel, resulting in his exposure to silica.   

On
December 5, 2005, GSF filed a ANotice of Transfer under Section 90.010(b),@ whereby Lopez=s case was transferred to the MDL
pretrial court.[2]  See Tex.
Civ. Prac. & Rem. Code Ann. ' 90.010(b) (Vernon Supp. 2006); Tex.
R. Jud. Admin.  13.11(c), reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit. F app. (Vernon Supp. 2006). 
Lopez filed a motion to remand and, in his pleadings, argued that the case
should be remanded to the 55th District Court because section 90.010 was
preempted by the Jones Act.  GSF argued that because the MDL rules applied to
all silica related claims, they all were to be transferred to the MDL pretrial
court. 

A
hearing was held on Lopez=s motion in the MDL pretrial court.  His counsel argued that
by transferring the case to the MDL pretrial court, Lopez is required to
provide an expert report complying with the provisions of chapter 90; the
report requirement is a substantive one not found in the Jones Act; therefore,
the provisions of chapter 90 are preempted by the federal law.  GSF, in
contrast, characterized the issue as one of venue.  Arguing that the provisions
by which Lopez=s case was transferred to the MDL pretrial court are merely procedural
provisions, GSF asserted that federal law did not preempt the state=s procedural provision.  After Judge
Christopher signed an order on January 10, 2006, remanding the case to the 55th
District Court, GSF filed its petition for writ of mandamus in this court.[3]








Mandamus Standard of Review 

Under
the MDL rules, an order or judgment of the pretrial court may be reviewed by
the appellate court regularly reviewing orders of the court in which the case
is pending at the time review is sought.  See Tex. R. Jud. Admin.
13.9(b); see, e.g., In re Fluor Enters., Inc., 186 S.W.3d 639,
642 (Tex. App.CAustin 2006, orig. proceeding [mand. denied]) (concluding that the
intermediate appellate court had mandamus jurisdiction to review an order of
the MDL pretrial court under rule 13.9(b)); In re Union Carbide Corp.,
145 S.W.3d 805, 806B07 (Tex. App.CHouston [14th Dist.] 2004, orig. proceeding) (reviewing order
of MDL pretrial court in mandamus proceeding).

Mandamus
is an extraordinary remedy that will issue to correct a clear abuse of
discretion and, generally, only when the relator lacks an adequate appellate
remedy.  See In re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex. 2002). 
A clear failure to correctly analyze or apply the law constitutes an abuse of
discretion.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). 
Accordingly, we review the remand order under an abuse of discretion standard. 
See In re Fluor, 186 S.W.3d at 643.

To
determine whether a party has an adequate remedy by appeal, we balance
jurisprudential considerations implicating both public and private interests.  In
re Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004).  When the
benefits of mandamus review outweigh its detriments, appellate courts must
consider whether the appellate remedy is adequate.  Id. GSF contends
that it has no adequate remedy by appeal because A[o]nce the pretrial phase of the case
is over, and trial has occurred, [GSF] will have lost the benefits of
efficiency and fairness conveyed by Section 90.@       

Discussion

In its
mandamus petition, GSF argues that the remand order is an abuse of discretion
because (1) it is contrary to the express language of section 90.010 and (2)
the MDL pretrial court misinterpreted federal preemption law.  








At issue
here is Texas Civil Practice and Remedies Code section 90.010(b), which enables
a defendant, in a suit for personal injury or death resulting from asbestos or
silica exposure, to file a notice of transfer to the MDL pretrial court should
the claimant fail to serve an expert report that complies with the statute.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 90.010 (Vernon Supp. 2006).  The
Jones Act, in contrast, does not contain a report requirement. 

 GSF
characterizes section 90.010(b) and the related MDL rules as venue provisions
and argues that because federal law is not concerned with venue, section
90.010(b) is not preempted by the Jones Act.  GSF contends that, even if
section 90.010 provisions are substantive, Congress has not explicitly or
implicitly occupied the field; therefore, we must give effect to the procedural
portions of chapter 90[4] because they
do not conflict with federal law.  GSF also asserts that whether the report
provisions in chapter 90 are preempted under the Jones Act is premature because
section 90.010(b) is the only provision applied to Lopez=s claims at this point.  It states
that many of the chapter=s provisions will not apply to Lopez=s suit because it was filed before
September 1, 2003; GSF concedes, however, that Athe Jones Act probably preempts the
portion of Section 90.010 that imposes a >minimum injury= requirement on silica plaintiffs.@  Further, GSF contends that some of
the report requirements merely dictate the way in which a plaintiff must prove
the reliability of his expert, similar to Rule of Evidence 702.  








Lopez
argues that chapter 90 is preempted by the Jones Act because the statute
substantially impairs the substantive rights of Jones Act plaintiffs and
precludes a uniform application of the federal maritime law.  He asserts that
Jones Act plaintiffs transferred to the MDL pre-trial court pursuant to chapter
90 are held there in Asuspended animation@ without a remedy until complying
with the minimum injury, reporting, and causation requirements set out in
chapter 90, requirements not found in the Jones Act.  He also contends that the
report requirements under chapter 90 directly conflict with the negligence
standard for recovery under the Jones Act. 

We must
decide whether transfer to the MDL pretrial court, pursuant to the provisions
of chapter 90, of Lopez=s Jones Act claims is precluded by the preemption doctrine. 
This is an issue of first impression, chapter 90 having been only recently
enacted.[5]  We begin
with preemption analysis under maritime law.  

GSF
frames its preemption argument as follows: (1) courts must be reluctant to find
preemption; (2) because Congress has not intended to Aoccupy the field@ in this area, preemption should be
found only if it is impossible to comply with both the state and federal laws,
that is, if they Aconflict@; and (3) the provisions here do not conflict with the Jones
Act.  Therefore, GSF reasons chapter 90=s procedural provisions must be
enforced.  

1. 
Preemption

Congressional
intent determines whether a federal statute preempts state law.  Gade v. Nat=l Solid Wastes Mgmt. Ass=n, 505 U.S. 88, 96 (1992); Am. Cyanamid Co. v. Geye,
79 S.W.3d 21, 23B24 (Tex. 2002).  AThe purpose of Congress is the
ultimate touchstone@ and is discerned by examining the statute=s language, its structure, and its
purpose.  Gade, 505 U.S. at 96.  We must determine whether the state law
is Aconsistent with the structure and
purpose of the [federal] statute as a whole. . . . and to its object and
policy.=@ Id. at 98. 








Generally,
absent express preemptive language, preemption may be implied if the statute=s scope indicates congressional
intent to Aoccupy the field@ or when the state law actually conflicts with the federal
statute.  Am. Cyanamid Co. 79 S.W.3d at 24.  GSF recites this preemption
principle, asserting that federal law is not concerned with a state=s procedural rules.  However, whether
procedural or substantive, a state=s law will be preempted when it
interferes or restricts remedies under a federal statute.   See Felder v.
Casey, 487 U.S. 131, 138 (1988). A[W]here state courts entertain a
federally created cause of action, the >federal right cannot be defeated by
the forms of local practice.=@ Id. (quoting Brown v.
Western Ry. Co. of Al., 338 U.S. 294, 296, (1949)).  The Supreme Court
stated in Gade:

We can no longer adhere to the aberrational doctrine .
. . that state law may frustrate the operation of federal law as long as the
state legislature in passing its law had some purpose in mind other than one of
frustration. . . . such a doctrine would enable state legislatures to nullify
nearly all unwanted federal legislation by simply publishing a legislative
committee report articulating some state interest or policyBother than frustration of the federal
objectiveBthat would be tangentially furthered by the proposed state law . . . .
Any state legislation which frustrates the full effectiveness of federal law is
rendered invalid by the Supremacy Clause.

505 U.S. at 106B07 (quoting Perez v. Campbell,
402 U.S. 637, 651B52 (1971)).   

2. 
Jones Act              


The
Jones Act provides a cause of action for a seaman injured in the course of his
employment by the negligence of his employer.  See 46 U.S.C.A. ' 688(a); see also Am. Dredging Co.
v. Miller, 510 U.S. 443, 455 (1994) (describing the Jones Act as
legislation that Aestablishes a uniform federal law that state as well as
federal courts must apply to the determination of employer liability to seamen.@).  Its purpose is to provide for the
benefit and protection of Aseamen who are peculiarly the wards of admiralty.@  The Arizona v. Anelich, 298
U.S. 110, 123 (1936); see also Stier v. Reading & Bates Corp., 992 S.W.2d 423,
429 (Tex. 1999) (AProviding a remedy to an injured
seaman is a >characteristic feature= of admiralty,@ quoting S. Pac. Co. v. Jensen,
244 U.S. 205, 216 (1917)).  The Jones Act is liberally construed to enlarge the
protection afforded to seamen under general maritime law.  See Arizona, 298
U.S. at 123; see also Kernan v. Am. Dredging Co., 355 U.S. 426, 432
(1958) (A[I]t is clear that the general
congressional intent was to provide liberal recovery for injured workers@ under the Jones Act).   








In
passing the Jones Act, Congress granted the same rights to seamen as it granted
to railway employees by the Federal Employers= Liability Act (AFELA@).  Cox v. Roth, 348 U.S. 207,
208 (1955).  Therefore, interpretations of FELA are instructive in deciding
issues under the Jones Act.  See Brown v. Parker Drilling Offshore Corp.,
410 F.3d 166, 178 (5th Cir. 2005) (AJones Act cases follow cases under
the FELA.@).  The Jones Act adopts the Auniformity requirement@ of FELA, and state courts are
required to apply a uniform federal law.  Am. Dredging, 510 U.S. at 456;
see Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 211 (1996).  

Under
the Jones Act, a state court may A>adopt such remedies, and . . . attach
to them such incidents, as it sees fit= so long as it does not attempt to
make changes@ in the substantive maritime law.  Am. Dredging Co., 510 U.S. at
447 (quoting Madruga v. Superior Court of Cal., County of San Diego, 346
U.S. 556, 561 (1954)).  Also, when considering preemption under the Jones Act,
we consider whether the state law concerns Aa >characteristic feature= of admiralty or a doctrine whose
uniform application is necessary to maintain the >proper harmony= of maritime law.@  See Stier, 992 S.W.2d at 428B29.[6] 
Uniformity in maritime law is important to the availability of unseaworthiness
as a basis of liability.  See Yamaha, 516 U.S. at 211.  

Whether
the Jones Act preempts provisions of chapter 90 depends on the impact of those
provisions on the rights and remedies provided under the federal statute.  If
it Astands as an obstacle to the
accomplishment and execution of the full purposes and objectives of Congress,@ chapter 90 will be preempted.  See
Gade, 505 U.S. at 98.[7]  








3. 
Chapter 90 

Effective
September 1, 2003, the Texas Legislature established the multi-district
litigation panel concept to coordinate pretrial handling of asbestos-related
claims.  See In re Union Carbide, 145 S.W.3d at 806 n.1; see
also Tex. Gov=t Code Ann. ' 74.161B.164 (Vernon 2005).[8]  In 2005,
Senate Bill 15 was signed into law, which established the method for handling a
pretrial docket for asbestos and silica related claims and set forth reporting
requirements and medical criteria by which impaired and unimpaired plaintiffs
are identified.  See Tex. Civ. Prac. & Rem. Code Ann. ' 90.001 cmt. (Vernon Supp. 2006)
[Acts of 2005, 79th Leg., R.S., ch. 97, ' 1, 2005 Tex. Gen. Laws 169, 170]. 
The 2005 legislation applies to any action pending on September 1, 2005, unless
exempted by one of several exceptionsBBnot at issue hereBBfor cases filed prior to September 1,
2003.  See id. ' 90.010(a).  Section 90.010(b) provides as follows:

If the claimant fails to serve a report complying with
. . . 90.004[9] on or before
the 90th day after [September 1, 2005] under Subsection (a)(2), the defendant
may file a notice of transfer to the MDL pretrial court. . . . If the MDL
pretrial court determines that the report was not served on or before the 90th
day after the date this chapter becomes law or that the report served does not
comply with . . . 90.004, the MDL pretrial court shall retain jurisdiction over
the action pursuant to the MDL rules.








Id. ' 90.010(b).  GSF relied on this
provision to request transfer of Lopez=s claims.  

Examining
the impact of section 90.010(b), the result is that a pre-September 1, 2003
Jones Act silica related claim is transferred to the MDL pretrial court if the
claimant fails to file a report complying with chapter 90; however, once there,
other provisions in section 90.010 dictate that the case remain there until a
report complying with chapter 90 is served or, presumably, until the claimant
is diagnosed with a malignant silica-related cancer.  See Tex. Civ. Prac.
& Rem. Code Ann. '' 90.010(a)(3), (b), (d), (f).  If section 90.010 is applied
to a pre-September 1, 2003 Jones Act claimant, he or she is free to pursue
federal remedies only by satisfying the report requirements contained in
chapter 90.  There is no such report requirement in the Jones Act. 
Consequently, because applying the provisions to the pre-2003 Jones Act
claimant thwarts federal remedies, it is preempted.  See, e.g., Norfolk
S. Ry. Co. v. Bogle, 850 N.E.2d 1281 (Ohio Ct. App. 2006); see also Gade,
505 U.S. at 105B06 (noting that preemption is, in part, Adefined by the state law=s actual effect.@).    

GSF
acknowledges that there is no report requirement under the Jones Act, and
states the Jones Act Aprobably@ preempts the portions of section 90.010 that impose a Aminimum injury@ requirement on those claimants.[10] 
GSF reasons, however, that while some provisions in section 90.010 may be
preempted, other provisionsBBsuch as section 90.010(b)BBwhich do not Aconflict@ with the Jones Act, must be
enforced.  We disagree.  Parsing the statute in this manner results in the
provisions within section 90.010 deemed Aprocedural@ applying to permit transfer, while
the substantive provisions, i.e., report requirements, will not apply
and the claimant must therefore be transferred back to the court of origin. 
This resulting Atransfer-retransfer@ procedure is a waste of resources
and is incompatible with the purposes of both the federal and state laws. 








GSF also
asserts that the Afeatherweight@ causation burden applied in Jones Act cases is not offended
by chapter 90=s provisions.  The Afeatherweight@ causation burden is defined as A>whether the proofs justify with
reason the conclusion that employer negligence played any part, even the
slightest, in producing the injury or death for which damages are sought.@  Diamond Offshore Mgmt. Co. v.
Horton, 193 S.W.3d 76, 79 (Tex. App.CHouston [1st Dist.] 2006, pet.
denied) (quoting Rogers v. Mo. Pac. R.R., 352 U.S. 500, 506 (1957))
(emphasis added); see also Johnson v. Offshore Express, Inc., 845 F.2d
1347, 1352 (5th Cir. 1988).  GSF claims the report requirements affect only the
manner in which the proof is presented.  Again, we disagree.  

A report
under section 90.004 must contain a history of the claimant=s past and present medical problems
and Atheir most probable cause.@  Tex. Civ. Prac. & Rem. Code
Ann. ' 90.004(a)(1).  If a claim for
silicosis is made, the report must verify that Athe physician has concluded that the
exposed person=s medical findings and impairment were not more probably the result of
causes other than silica exposure revealed by the exposed person=s occupational, exposure, medical,
and smoking history.@  Id. ' 90.004(b)(3).  If claiming silica-related lung cancer, the
report must include that Ainhalation of silica was a substantial contributing factor to
that cancer.@  Id. ' 90.004(c)(1).  The remaining provisions of section 90.004
provide as follows:  

(d) If the claimant is asserting a claim for any disease other than
silicosis and lung cancer alleged to be related to exposure to silica, the
report required by Subsection (a) must also verify that the physician has
diagnosed the exposed person with a disease other than silicosis or silica‑related
lung cancer and has concluded that the exposed person=s disease is not more probably the result of causes
other than silica exposure.

(e) The detailed occupational and exposure history required by
Subsection (a)(1)(B) must describe:

(1) the exposed person=s principal
employments and state whether the exposed person was exposed to airborne
contaminants, including silica and other dusts that can cause pulmonary
impairment;  and








(2) the nature, duration, and
frequency of the exposed person=s exposure to airborne contaminants, including silica and
other dusts that can cause pulmonary impairment. 

Id. ' 90.004(d),(e).  Thus, a report under
section 90.004 for any silica-related injury requires a defined level of
causation between the claimant=s exposure and his illness; while perhaps not a direct
causative relationship, it is at least one blurring the line between substance
and procedure.  Indeed, even GSF states A[t]he line between >substance= and >procedure= must be drawn more finely@ in this case than others and, at one
point, refers to the doctor=s report under chapter 90 as a Acausation report.@ 

Likening
chapter 90=s report requirements to Texas=s Rule of Evidence 702, GSF argues
that Lopez will be required to establish the reliability of his medical experts
and meet normal standards of proof even if the case proceeds in 55th District
Court.  GSF=s argument suggests that transfer to an MDL pretrial court would not
alter Lopez=s obligation with regard to medical reports or reliability of experts.   

4. 
Other Case Law   


Both
parties rely on Norfolk S. Ry. Co. v. Bogle, 850 N.E.2d 1281 (Ohio Ct.
App. 2006), a case similar to the facts before us.[11] 
In Norfolk, the plaintiffs filed claims for injuries caused by
occupational exposure to asbestos.  See id. at 1283.  The trial court
concluded that the state=s law, House Bill 292, a statute similar to chapter 90, was
preempted by the FELA and/or the Locomotive Boiler Inspection Act (ALBIA@).  See id. at 1283, 1286. 
After setting out the principles of preemption and examining the report
requirements of H.B. 292, the Ohio appellate court stated: 








We hold that this requirement would >gnaw= at the FELA/LBIA claimants= substantive rights to assert a cause
of action under federal law in a state court.  FELA claimants would essentially
be indefinitely precluded from asserting their federal rights until they
complied with these requirements.  This would not further Congress=s intent of creating >uniformity throughout the Union with
respect to railroads= financial responsibility for injuries to their employees.= 

Id. at 1289 (quoting Norfolk & W.
Ry. Co. v. Liepelt, 444 U.S. 490, 493 (1980)).  This is the reasoning
expressed by Lopez.    

GSF
argues that Bogle is instructive because the features of Ohio=s law are not an issue in this case. 
GSF claims that H.B. 292 is more harsh than chapter 90, because the plaintiff=s claim under H.B. 292 is dismissed
without prejudice, and A[t]hus, Ohio simply does not permit asbestos plaintiffs with
minor injuries to maintain a lawsuit.@  However, under chapter 90, assuming
the pre-September 1, 2003 plaintiff does not meet the report requirements, the
result is that his suit languishes in the MDL pre-trial court, precludingBBor, at least, delayingBBpursuit of his federal remedies.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 90.010(d),(f)B(h). 

GSF also
cites American Dredging Company v. Miller as directly on point.  See 510
U.S. at 445B46.  In that case, the defendants had argued that the forum non
conveniens defense available to them under federal law was not available under
Louisiana=s statute, and, therefore, Louisiana=s law was preempted.  Id. at
450B51.  The Court examined whether the
forum non conveniens doctrine Ais either a >characteristic feature= of admiralty or a doctrine whose
uniform application is necessary to maintain the >proper harmony= of maritime law.@  Id. at 447.  It concluded
that the doctrine neither originated in admiralty law nor had exclusive
application there; consequently, Louisiana=s statute did not Awork material prejudice to a
characteristic feature of the general maritime law,@ and was not preempted.  Id.
at 450.[12]  








American
Dredging is
inapposite to the subject case.  AThe Jones Act has the effect of
bringing into the maritime law . . . all appropriate statutes relating to
employers= liability for personal injury or death@ for the benefit of seamen.  Bainbridge
v. Merchants= & Miners= Transp. Co., 287 U.S. 278, 282 (1932).  Thus,
the Jones Act claim here is not comparable to a procedural doctrine. 
Uniformity in the application of federal law plays a larger role in the
preemption analysis when an unseaworthiness claim is involved.  See Yamaha,
516 U.S. at 211.             

In
short, GSF=s argument rests on the conclusion that section 90.010(b) is procedural
and can be construed apart from chapter 90=s remaining provisionsBBin fact, from other provisions in
that section.  We disagree with GSF that section 90.010(b) is merely procedural
and susceptible to segregation from other chapter 90 provisions.  Section
90.010(b) is an integral part of the larger MDL design and cannot be isolated from
it.  Even so, by applying only section 90.010(b), Lopez is precluded from
pursuing his rights under the Jones Act.  Whether procedural or substantive,
chapter 90 is preempted by federal law.  See Gade, 505 U.S. at 98; Felder,
487 U.S. at 138.   

Conclusion

Because we conclude that application of chapter 90=s provisions to Lopez=s Jones Act claims interferes with or restricts his remedies under the
federal statute, whether substantive or procedural, the state law is
preempted.   Accordingly, we deny GSF=s
petition for writ of mandamus.                                                                              

 

/s/      Adele Hedges

Chief Justice 

 

 

 

Petition denied and Opinion filed
December 19, 2006.

Panel consists of Chief Justice
Adele Hedges, Justices Yates and Seymore.









[1]  See 46 U.S.C.A. ' 688 (2000). 





[2]  In its Notice, GSF stated that as an Ainjurious exposure to silica@ case, it was addressed by the November 10, 2004 MDL
Panel decision as a Atag-along@
case. 





[3]  GSF filed a motion to reconsider with the MDL
Panel.  The panel concluded its jurisdiction to review remand orders was
limited to those in which remand was based on deciding whether a case was a Atag along.@  See
Tex. R. Jud. Admin. 13.5(e) (stating a remand order of the pretrial court
based on the ground that the case remanded is not a tag-along case may be
appealed to the MDL panel).  





[4]  See Tex. Civ. Prac. & Rem. Code Ann. '' 90.001B.012
(Vernon Supp. 2006) (setting out the pretrial handling of claims involving
asbestos and silica).  





[5]  To date, it appears that only one state has directly
addressed the impact of its MDL statute on a Jones Act claim.  E.g., Norfolk
S. Ry. Co. v. Bogle, 850 N.E.2d 1281 (Oh. Ct. App. 2006), appeal allowed
by, 852 N.E.2d 1213 (Oh. 2006) (unpublished table opinion No.
2006-1025).     





[6]  In Stier, a case involving a nonresident
seaman injured in the territorial waters of another nation, the court concluded
that under either standard, the seaman=s
state law tort claims were impliedly preempted.  992 S.W.2d at 429. 





[7]  Preemption analysis under maritime law is somewhat
different than preemption in other areas of the law.  See Stier, 992 S.W.2d at 428.  For example, while preemption under the Supremacy
Clause starts with the basic assumption that Congress did not intend to
displace state law, in Stier the court noted that decisions addressing
preemption issues under admiralty law typically have not applied or even
mentioned the Supremacy Clause.  Id.  Also, preemption under maritime
law has historically recognized that state laws must yield to the needs of an
area of law which requires Aharmony and
uniformity.@  S. Pac. Co. v. Jensen, 244 U.S. 205, 216
(1917).  Currently, there is no bright line rule to determine when a state law
is preempted under federal maritime law.  See Stier, 992 S.W.2d at 429
(noting that Jensen may be overruled); see also Am. Dredging
Co., 510 U.S. at 452 (AIt would be
idle to pretend that the line separating permissible from impermissible state
regulation is readily discernible in our admiralty jurisprudence, or indeed is
even entirely consistent within our admiralty jurisprudence.@). 





[8]  The MDL panel designated Judge Mark Davidson of the
11th Judicial District Court of Harris County as the pretrial judge to whom the
asbestos cases would be transferred. In re Union Carbide, 145 S.W.3d at
806 n.1.  





[9]  Section 90.004 sets out the report requirements for
silica-related injuries, and section 90.003 pertains to asbestos-related
injuries.  See Tex. Civ. Prac. & Rem. Code Ann. '' 90.003, 90.004 (Vernon Supp. 2006).  Because Lopez=s claims are for silica-related injuries, our citation
to report requirements is to section 90.004 only.  





[10]  As noted in the subsequent discussion concerning the
causation burden under the Jones Act, various report requirements in chapter 90
impose a certain level of impairment, caused by exposure to asbestos or silica,
before a claimant may proceed with his claim.  





[11]  The case was accepted for appeal by the Ohio Supreme
Court, 852 N.E.2d 1213, on August 23, 2006.  





[12]  The Court also noted the disparity within its
decisions concerning state regulations and maritime law, but decided that where
those boundaries may lie was not a question it had to decide in that case.  Id.
at 453.  Instead, the Court concluded that the doctrine was procedural rather
than substantive; as such, its application would not produce uniform results,
and the doctrine under federal law was not applicable to the states.  Id.
at 457.