**In re UNION CARBIDE CORPORATION, Certain Teed Corporation, The Dow Chemical Company, General Electric Company, and Kelly-Moore Paint Company, Relators.**

**In re ExxonMobil Corporation, Relator.**

Nos. 14–04–00538–CV, 14–04–00539–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 23, 2004.

Reagan W. Simpson, Stephen G. Tipps, Arthur R. Almquist, Amy Douhitt Maddux and David Clayton Searle, Cynthia Gay Odom Crawford, F. Walters Conrad, Jr., J. Eric Toher, Houston, Paula Heirtzler Blazek, Beaumont, Sarah E. Iiams and Lawrence Emerson Abbott, New Orleans, LA, Todd N. Wade and Kay Andrews, Austin, Gary D. Elliston, Dallas, for Relator.

Leanne Jackson, Michael J. Hanners, Russell W. Budd, Steven T. Baron, Brent Rosenthal, Kevin Duane Mchargue, Dallas, Lou Thompson Black, Robert Eugene Shuttlesworth, Rola S. Hart, Sandra Thourot Krider, Scott R. Link, Brady Sherrod, Houston, Aaryn Kemp Giblin, Bryan O. Blevins Jr., Colin D. Moore, John A. Cowan, Beaumont, for Respondent.

Panel consists of Justice EDELMAN, Senior Chief Justice MURPHY, and Senior Justice MIRABAL.*

## OPINION

PER CURIAM.

This consolidated mandamus proceeding involves a pretrial docket control ruling by the Presiding Judge of the first Multidistrict Litigation (MDL) Court in Texas, to which all asbestos cases filed in Texas after September 1, 2003, have been transferred.[1] As of May 7, 2004, more than 1,500 asbestos cases had been transferred to the MDL Court.

Relators in this mandamus proceeding are defendants in the asbestos-related lawsuits in the MDL Court. The real parties in interest are plaintiffs in the lawsuits. Certain of the relators filed a "Defendants' Motion to Establish an Unimpaired Docket," and the remaining relators filed pleadings in support of the motion. The MDL Court denied the motion.

### Standard of Review

■ Mandamus is an extraordinary remedy, available only when a trial court

---

* Senior Chief Justice Paul Murphy and Senior Justice Margaret Mirabal sitting by assignment.

1. In 2003, the Texas Legislature created the Judicial Panel on Multidistrict Litigation (the MDL Panel). *See* Tex. Gov't Code Ann. §§ 74.161–74.164 (Vernon Supp.2004). The legislation authorizes the MDL panel to "transfer civil actions involving one or more common questions of fact ... to any district court for consolidated or coordinated pretrial proceedings, including summary judgment or other dispositive motions, but not for trial on the merits." *Id.* § 74.162. Further, the Texas Supreme Court promulgated Rule of Judicial Administration 13, which grants an MDL pre-trial court broad power to manage transferred cases. Tex.R. Jud. Admin. 13, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (Vernon Supp.2004). In December 2003, the MDL Panel ordered the transfer of three asbestos-related cases and all "tag along" cases to a single district judge, and thereafter, the MDL Panel designated Judge Mark Davidson of the 11th Judicial District Court as the pretrial judge to whom all post-September 1, 2003, asbestos cases would be transferred. *Union Carbide v. Adams*, No. 03–0895 (Tex. M.D.L. Panel Dec. 20, 2003) (order transferring cases); *id.* (Jan. 13, 2004) (order designating Judge Davidson).

clearly abuses its discretion and when there is no adequate remedy on appeal. *In re Kuntz*, 124 S.W.3d 179, 180 (Tex. 2003) (orig.proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). A trial court's determination of a factual issue is entitled to deference in a mandamus proceeding and should not be set aside unless it is clear from the record that only one decision could have been reached. *Kuntz*, 124 S.W.3d at 181; *Walker*, 827 S.W.2d at 840.

Accordingly, the issue presented is whether relators were clearly entitled to the specific relief they sought, *i.e.*, whether the MDL Court acted arbitrarily and unreasonably by not granting relators' motion.

### The Hearings

The MDL Court held three hearings leading up to this mandamus proceeding. The first hearing, conducted February 20, 2004, dealt with the parties' different proposed docket control orders for the litigation. The court allowed full discussion and stated that it intended to have a docket control order in place within a week. The court also stated an intent to form a committee of representatives from all sides of the MDL docket to consult with the court regarding the MDL docket procedures and, in fact, convened the first committee

meeting immediately following the hearing.

The second hearing was conducted on April 19, 2004. The purpose was to hear arguments regarding the draft of the "Fast Track Docket Control Order" that had been designed by the committee appointed by the court.[2] Thereafter, relators filed a pleading moving "that the Court establish an unimpaired docket for cases in which plaintiffs neither suffer from malignancies nor satisfy objective criteria for functional impairment." The pleading acknowledged that the court had already established a "Fast–Track" case management system that gave seriously ill asbestos plaintiffs the opportunity to have their cases certified and remanded for trial within six months. The main focus of the pleading was on the cases on a "Normal–Track" schedule. Under relators' proposal, "plaintiffs who neither allege a malignant condition nor are capable of satisfying the ABA Standard for Non–Malignant Asbestos–Related Disease Claims[3] would have their claims stayed on an inactive docket." While on the inactive docket, the plaintiffs would not be able to proceed with discovery, file pretrial pleadings, or otherwise pursue their claims in court, but they would not lose their causes of action for want of prosecution or running of the statute of limitations. The stayed claims could then be reactivated only under certain conditions.[4] The plaintiffs filed responses objecting to relators' motion.

---

**2.** With our permission, relators filed a Supplemental Record that contains the MDL Court's standing Case Management Order, signed on July 29, 2004. This order provides for creation of a "Fast–Track Docket," as was previously proposed.

**3.** In February 2003, the American Bar Association House of Delegates passed a resolution calling on Congress to enact legislation providing for a national unimpaired docket, and

in connection with this resolution, the ABA promulgated a set of medical criteria called the "Standard for Non–Malignant Asbestos–Related Disease Claims." Congress has not enacted the proposed legislation.

**4.** Under relators' proposal, the plaintiffs could "activate" or "remove" their claims to the active docket if (1) they later developed asbestos-related symptoms meeting the ABA criteria, or (2) the MDL Court determined

On May 7, 2004, the MDL Court conducted an evidentiary hearing on relators' motion. Each side presented an expert witness. Relators' expert testified in support of adopting the ABA criteria, and the expert for the plaintiffs testified against adopting the criteria. At the conclusion of the hearing, the court announced its decision to sign an order denying the relief requested by relators. The court also made findings of fact and conclusions of law in support of its ruling.

### Discussion

■ Applying the established standard of review for this mandamus proceeding, particularly in light of the testimony of the dueling experts, we cannot say that the MDL Court acted arbitrarily and unreasonably when it denied relators' motion.

Relators argue that, even if we conclude the court's denial of the motion was not arbitrary and unreasonable, we should still grant mandamus relief if the court stated erroneous reasons in its conclusions of law.[5] Relators state that "[t]he tenet of mandamus jurisprudence that a trial judge does not abuse his discretion where he 'reaches the right result for the wrong reasons,' *In re ExxonMobil*, 97 S.W.3d 353, 358 n. 5 [ (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding) ]; does not alter the analysis," citing two cases in support of their position. However, relators' cases are distinguishable.

In *Huie v. DeShazo*, 922 S.W.2d 920 (Tex.1996) (orig.proceeding), material facts were undisputed (there was an attorney/trustee relationship), and the trustee was entitled as a matter of law to the relief sought, the protection afforded by the attorney/client privilege. *Id.* at 923–25. Similarly, in *National Union Fire Insurance Co. v. Ninth Court of Appeals*, 864 S.W.2d 58 (Tex.1993) (orig.proceeding), the material facts were undisputed (the explanation given by the appellant in support of its motion for an extension of time to file the statement of facts), and the explanation given was reasonable as a matter of law so appellant was entitled to the relief sought, the filing of the statement of facts. *Id.* at 60–62. In contrast, in the present case, the material facts are *disputed* (the validity of the ABA criteria called the "Standard for Non–Malignant Asbestos–Related Disease Claims"), and relators are *not entitled as a matter of law* to the relief sought, the establishment of an unimpaired docket based on the ABA criteria,[6] regardless of whether the court's stated conclusions of law are correct.[7]

It is clear from the records from all three hearings, as well as from the court's standing Case Management Order, that the MDL Court is diligently attempting to deal efficiently with the difficult and challenging issues presented by the massive MDL docket. No abuse of discretion has been shown.

---

that sufficient more serious cases had been resolved to create room on the active docket.

5. The court's conclusions of law were: (1) creation of an inactive or unimpaired docket is a violation of the Texas Constitution; (2) creation of an inactive or unimpaired docket is a violation of Rule 13 of the Rules of Judicial Administration; and (3) refusal of the court to attempt to prepare a case for trial and to set a case for trial is a violation of Texas law.

6. We review a trial court's ruling based on the relief requested in the trial court. Relators' motion sought to apply the ABA criteria, and the focus of the evidentiary hearing was on the validity of the ABA criteria.

7. Accordingly, we do not reach the issue of whether the MDL Court's conclusions of law are correct.

*Conclusion*

We deny relators' petition for writ of mandamus.