**In re GLOBAL SANTA FE CORPORATION,**
**Relator.**

No. 14–06–00625–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 19, 2006.

*Lidawi v. Progressive County Mut. Ins. Co.,* 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

John B. Hall, Houston, for appellant.

John Milton Black, Houston, for appellee.

Panel consists of Chief Justice ADELE HEDGES, Justices YATES and SEYMORE.

## OPINION

ADELE HEDGES, Chief Justice.

In this original proceeding, relator GlobalSantaFe Corporation ("GSF") challenges an order signed by respondent, the Honorable Tracy Christopher, presiding judge of the 295th Judicial District Court, the silica multidistrict litigation pretrial court ("MDL pretrial court"), in which real party's Jones Act claims were remanded to the 55th Judicial District Court of Harris County. GSF claims that the MDL pretrial court must retain the case pursuant to chapter 90 of Texas's Civil Practice and Remedies Code. For the reasons set forth below, we deny GSF's petition for a writ of mandamus.

## BACKGROUND

On May 29, 2003, real party in interest John Lopez filed his Jones Act[1] claims in the 55th District Court against GSF, alleging that it had failed to provide a safe and seaworthy vessel, resulting in his exposure to silica.

On December 5, 2005, GSF filed a "Notice of Transfer under Section 90.010(b)," whereby Lopez's case was transferred to the MDL pretrial court.[2] See Tex. Civ. Prac. & Rem.Code Ann. § 90.010(b) (Vernon Supp.2006); Tex.R. Jud. Admin. 13.11(c), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. F app. (Vernon Supp. 2006). Lopez filed a motion to remand and, in his pleadings, argued that the case should be remanded to the 55th District Court because section 90.010 was preempted by the Jones Act. GSF argued that because the MDL rules applied to all silica related claims, they all were to be transferred to the MDL pretrial court.

A hearing was held on Lopez's motion in the MDL pretrial court. His counsel argued that by transferring the case to the MDL pretrial court, Lopez is required to provide an expert report complying with the provisions of chapter 90; the report requirement is a substantive one not found in the Jones Act; therefore, the provisions of chapter 90 are preempted by the federal law. GSF, in contrast, characterized the issue as one of venue. Arguing that the provisions by which Lopez's case was transferred to the MDL pretrial court are merely procedural provisions, GSF asserted that federal law did not preempt the

1. See 46 App.U.S.C.A. § 688 (2000).

2. In its Notice, GSF stated that as an "injurious exposure to silica" case, it was addressed by the November 10, 2004 MDL Panel decision as a "tag-along" case.

state's procedural provision. After Judge Christopher signed an order on January 10, 2006, remanding the case to the 55th District Court, GSF filed its petition for writ of mandamus in this court.[3]

## MANDAMUS STANDARD OF REVIEW

■ Under the MDL rules, an order or judgment of the pretrial court may be reviewed by the appellate court regularly reviewing orders of the court in which the case is pending at the time review is sought. See Tex.R. Jud. Admin. 13.9(b); see, e.g., In re Fluor Enters., Inc., 186 S.W.3d 639, 642 (Tex.App.-Austin 2006, orig. proceeding [mand. denied] ) (concluding that the intermediate appellate court had mandamus jurisdiction to review an order of the MDL pretrial court under rule 13.9(b)); In re Union Carbide Corp., 145 S.W.3d 805, 806–07 (Tex.App.-Houston [14th Dist.] 2004, orig. proceeding) (reviewing order of MDL pretrial court in mandamus proceeding).

■ Mandamus is an extraordinary remedy that will issue to correct a clear abuse of discretion and, generally, only when the relator lacks an adequate appellate remedy. See In re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex.2002). A clear failure to correctly analyze or apply the law constitutes an abuse of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992). Accordingly, we review the remand order under an abuse of discretion standard. See In re Fluor, 186 S.W.3d at 643.

■■ To determine whether a party has an adequate remedy by appeal, we balance jurisprudential considerations im-plicating both public and private interests. In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex.2004). When the benefits of mandamus review outweigh its detriments, appellate courts must consider whether the appellate remedy is adequate. Id. GSF contends that it has no adequate remedy by appeal because "[o]nce the pretrial phase of the case is over, and trial has occurred, [GSF] will have lost the benefits of efficiency and fairness conveyed by Section 90."

## DISCUSSION

In its mandamus petition, GSF argues that the remand order is an abuse of discretion because (1) it is contrary to the express language of section 90.010 and (2) the MDL pretrial court misinterpreted federal preemption law.

At issue here is Texas Civil Practice and Remedies Code section 90.010(b), which enables a defendant, in a suit for personal injury or death resulting from asbestos or silica exposure, to file a notice of transfer to the MDL pretrial court should the claimant fail to serve an expert report that complies with the statute. See Tex. Civ. Prac. & Rem.Code Ann. § 90.010 (Vernon Supp.2006). The Jones Act, in contrast, does not contain a report requirement.

GSF characterizes section 90.010(b) and the related MDL rules as venue provisions and argues that because federal law is not concerned with venue, section 90.010(b) is not preempted by the Jones Act. GSF contends that, even if section 90.010 provisions are substantive, Congress has not explicitly or implicitly occupied the field; therefore, we must give effect to the pro-

3. GSF filed a motion to reconsider with the MDL Panel. The panel concluded its jurisdiction to review remand orders was limited to those in which remand was based on deciding whether a case was a "tag along." See Tex.R. Jud. Admin. 13.5(e) (stating a remand order of the pretrial court based on the ground that the case remanded is not a tag-along case may be appealed to the MDL panel).

cedural portions of chapter 90[4] because they do not conflict with federal law. GSF also asserts that whether the report provisions in chapter 90 are preempted under the Jones Act is premature because section 90.010(b) is the only provision applied to Lopez's claims at this point. It states that many of the chapter's provisions will *not* apply to Lopez's suit because it was filed before September 1, 2003; GSF concedes, however, that "the Jones Act probably preempts the portion of Section 90.010 that imposes a 'minimum injury' requirement on silica plaintiffs." Further, GSF contends that some of the report requirements merely dictate the way in which a plaintiff must prove the reliability of his expert, similar to Rule of Evidence 702.

Lopez argues that chapter 90 is preempted by the Jones Act because the statute substantially impairs the substantive rights of Jones Act plaintiffs and precludes a uniform application of the federal maritime law. He asserts that Jones Act plaintiffs transferred to the MDL pre-trial court pursuant to chapter 90 are held there in "suspended animation" without a remedy until complying with the minimum injury, reporting, and causation requirements set out in chapter 90, requirements not found in the Jones Act. He also contends that the report requirements under chapter 90 directly conflict with the negligence standard for recovery under the Jones Act.

We must decide whether transfer to the MDL pretrial court, pursuant to the provisions of chapter 90, of Lopez's Jones Act claims is precluded by the preemption doctrine. This is an issue of first impression,

chapter 90 having been only recently enacted.[5] We begin with preemption analysis under maritime law.

GSF frames its preemption argument as follows: (1) courts must be reluctant to find preemption; (2) because Congress has not intended to "occupy the field" in this area, preemption should be found only if it is impossible to comply with both the state and federal laws, that is, if they "conflict"; and (3) the provisions here do not conflict with the Jones Act. Therefore, GSF reasons chapter 90's procedural provisions must be enforced.

### 1. Preemption

■■■ Congressional intent determines whether a federal statute preempts state law. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); *Am. Cyanamid Co. v. Geye*, 79 S.W.3d 21, 23–24 (Tex.2002). "The purpose of Congress is the ultimate touchstone" and is discerned by examining the statute's language, its structure, and its purpose. *Gade*, 505 U.S. at 96, 112 S.Ct. 2374. We must determine whether the state law is "consistent with the structure and purpose of the [federal] statute as a whole . . . . and to its object and policy.'" *Id.* at 98, 112 S.Ct. 2374.

■■■ Generally, absent express preemptive language, preemption may be implied if the statute's scope indicates congressional intent to "occupy the field" or when the state law actually conflicts with the federal statute. *Am. Cyanamid Co.* 79 S.W.3d at 24. GSF recites this preemption principle, asserting that federal law is

---

4. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 90.001–.012 (Vernon Supp.2006) (setting out the pretrial handling of claims involving asbestos and silica).

5. To date, it appears that only one state has directly addressed the impact of its MDL stat-

ute on a Jones Act claim. *E.g., Norfolk S. Ry. Co. v. Bogle*, 166 Ohio App.3d 449, 850 N.E.2d 1281 (2006), *appeal allowed by*, 110 Ohio St.3d 1463, 852 N.E.2d 1213 (Oh.2006) (unpublished table opinion No.2006–1025).

not concerned with a state's procedural rules. However, whether procedural or substantive, a state's law will be preempted when it interferes or restricts remedies under a federal statute. *See Felder v. Casey*, 487 U.S. 131, 138, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). "[W]here state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'" *Id.* (quoting *Brown v. Western Ry. of Ala.*, 338 U.S. 294, 296, 70 S.Ct. 105, 94 L.Ed. 100, (1949)). The Supreme Court stated in *Gade:*

> We can no longer adhere to the aberrational doctrine ... that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration .... such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law.... Any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.

505 U.S. at 106–07, 112 S.Ct. 2374 (quoting *Perez v. Campbell*, 402 U.S. 637, 651–52, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)).

### 2. Jones Act

▮▮▮▮ The Jones Act provides a cause of action for a seaman injured in the course of his employment by the negligence of his employer. *See* 46 App. U.S.C.A. § 688(a); *see also Am. Dredging Co. v. Miller*, 510 U.S. 443, 455, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (describing the Jones Act as legislation that "establishes a uniform federal law that state as well as federal courts must apply to the determination of employer liability to seamen.").

Its purpose is to provide for the benefit and protection of "seamen who are peculiarly the wards of admiralty." *The Arizona v. Anelich*, 298 U.S. 110, 123, 56 S.Ct. 707, 80 L.Ed. 1075 (1936); *see also Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 429 (Tex.1999) ("Providing a remedy to an injured seaman is a 'characteristic feature' of admiralty," quoting *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)). The Jones Act is liberally construed to enlarge the protection afforded to seamen under general maritime law. *See Arizona*, 298 U.S. at 123, 56 S.Ct. 707; *see also Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) ("[I]t is clear that the general congressional intent was to provide liberal recovery for injured workers" under the Jones Act).

▮▮▮▮ In passing the Jones Act, Congress granted the same rights to seamen as it granted to railway employees by the Federal Employers' Liability Act ("FELA"). *Cox v. Roth*, 348 U.S. 207, 208, 75 S.Ct. 242, 99 L.Ed. 260 (1955). Therefore, interpretations of FELA are instructive in deciding issues under the Jones Act. *See Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 178 (5th Cir. 2005) ("Jones Act cases follow cases under the FELA."). The Jones Act adopts the "uniformity requirement" of FELA, and state courts are required to apply a uniform federal law. *Am. Dredging*, 510 U.S. at 456, 114 S.Ct. 981; *see Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 211, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).

▮▮▮▮ Under the Jones Act, a state court may "'adopt such remedies, and ... attach to them such incidents, as it sees fit' so long as it does not attempt to make changes" in the substantive maritime law. *Am. Dredging Co.*, 510 U.S. at 447, 114 S.Ct. 981 (quoting *Madruga v. Superior*

*Court of Cal., County of San Diego,* 346 U.S. 556, 561, 74 S.Ct. 298, 98 L.Ed. 290 (1954)). Also, when considering preemption under the Jones Act, we consider whether the state law concerns "a 'characteristic feature' of admiralty or a doctrine whose uniform application is necessary to maintain the 'proper harmony' of maritime law." *See Stier,* 992 S.W.2d at 428–29.[6] Uniformity in maritime law is important to the availability of unseaworthiness as a basis of liability. *See Yamaha,* 516 U.S. at 211, 116 S.Ct. 619.

Whether the Jones Act preempts provisions of chapter 90 depends on the impact of those provisions on the rights and remedies provided under the federal statute. If it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," chapter 90 will be preempted. *See Gade,* 505 U.S. at 98, 112 S.Ct. 2374.[7]

### 3. Chapter 90

Effective September 1, 2003, the Texas Legislature established the multi-district litigation panel concept to coordinate pretrial handling of asbestos-related claims. *See In re Union Carbide,* 145 S.W.3d at 806 n. 1; *see also* Tex. Gov't Code Ann. § 74.161–.164 (Vernon 2005).[8] In 2005, Senate Bill 15 was signed into law, which established the method for handling a pretrial docket for asbestos and silica related claims and set forth reporting requirements and medical criteria by which impaired and unimpaired plaintiffs are identified. *See* Tex. Civ. Prac. & Rem.Code Ann. § 90.001 cmt. (Vernon Supp.2006) [Acts of 2005, 79th Leg., R.S., ch. 97, § 1, 2005 Tex. Gen. Laws 169, 170]. The 2005 legislation applies to any action pending on September 1, 2005, unless exempted by one of several exceptions—not at issue here—for cases filed prior to September 1, 2003. *See id.* § 90.010(a). Section 90.010(b) provides as follows:

> If the claimant fails to serve a report complying with ... 90.004 [9] on or before the 90th day after [September 1, 2005] under Subsection (a)(2), the defendant may file a notice of transfer to the MDL

---

6. In *Stier,* a case involving a nonresident seaman injured in the territorial waters of another nation, the court concluded that under either standard, the seaman's state law tort claims were impliedly preempted. 992 S.W.2d at 429.

7. Preemption analysis under maritime law is somewhat different than preemption in other areas of the law. *See Stier,* 992 S.W.2d at 428. For example, while preemption under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law, in *Stier* the court noted that decisions addressing preemption issues under admiralty law typically have not applied or even mentioned the Supremacy Clause. *Id.* Also, preemption under maritime law has historically recognized that state laws must yield to the needs of an area of law which requires "harmony and uniformity." *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). Currently, there is no bright line rule to determine when a state law is preempted under federal maritime law. *See Stier,* 992 S.W.2d at 429 (noting that *Jensen* may be overruled); *see also Am. Dredging Co.,* 510 U.S. at 452, 114 S.Ct. 981 ("It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence.").

8. The MDL panel designated Judge Mark Davidson of the 11th Judicial District Court of Harris County as the pretrial judge to whom the asbestos cases would be transferred. *In re Union Carbide,* 145 S.W.3d at 806 n. 1.

9. Section 90.004 sets out the report requirements for silica-related injuries, and section 90.003 pertains to asbestos-related injuries. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 90.003, 90.004 (Vernon Supp.2006). Because Lopez's claims are for silica-related injuries, our citation to report requirements is to section 90.004 only.

pretrial court.... If the MDL pretrial court determines that the report was not served on or before the 90th day after the date this chapter becomes law or that the report served does not comply with ... 90.004, the MDL pretrial court shall retain jurisdiction over the action pursuant to the MDL rules.

*Id.* § 90.010(b). GSF relied on this provision to request transfer of Lopez's claims.

 Examining the impact of section 90.010(b), the result is that a pre-September 1, 2003 Jones Act silica related claim is transferred to the MDL pretrial court if the claimant fails to file a report complying with chapter 90; however, once there, other provisions in section 90.010 dictate that the case remain there until a report complying with chapter 90 is served or, presumably, until the claimant is diagnosed with a malignant silica-related cancer. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 90.010(a)(3), (b), (d), (f). If section 90.010 is applied to a pre-September 1, 2003 Jones Act claimant, he or she is free to pursue federal remedies only by satisfying the report requirements contained in chapter 90. There is no such report requirement in the Jones Act. Consequently, because applying the provisions to the pre-2003 Jones Act claimant thwarts federal remedies, it is preempted. *See, e.g., Norfolk S. Ry. Co. v. Bogle,* 166 Ohio App.3d 449, 850 N.E.2d 1281 (2006); *see also Gade,* 505 U.S. at 105–06, 112 S.Ct. 2374 (noting that preemption is, in part, "defined by the state law's actual effect.").

GSF acknowledges that there is no report requirement under the Jones Act, and states the Jones Act "probably" preempts the portions of section 90.010 that impose a "minimum injury" requirement on those claimants.[10] GSF reasons, however, that while some provisions in section 90.010 may be preempted, other provisions—such as section 90.010(b)—which do not "conflict" with the Jones Act, must be enforced. We disagree. Parsing the statute in this manner results in the provisions within section 90.010 deemed "procedural" applying to permit transfer, while the substantive provisions, *i.e.,* report requirements, will not apply and the claimant must therefore be transferred back to the court of origin. This resulting "transfer-retransfer" procedure is a waste of resources and is incompatible with the purposes of both the federal and state laws.

 GSF also asserts that the "featherweight" causation burden applied in Jones Act cases is not offended by chapter 90's provisions. The "featherweight" causation burden is defined as " 'whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest,* in producing the injury or death for which damages are sought.' " *Diamond Offshore Mgmt. Co. v. Horton,* 193 S.W.3d 76, 79 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (quoting *Rogers v. Mo. Pac. R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)) (emphasis added); *see also Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1352 (5th Cir.1988). GSF claims the report requirements affect only the manner in which the proof is presented. Again, we disagree.

A report under section 90.004 must contain a history of the claimant's past and present medical problems and "their most probable cause." Tex. Civ. Prac. & Rem. Code Ann. § 90.004(a)(1). If a claim for silicosis is made, the report must verify that "the physician has concluded that the exposed person's medical findings and im-

10. As noted in the subsequent discussion concerning the causation burden under the Jones Act, various report requirements in chapter 90 impose a certain level of impairment, caused by exposure to asbestos or silica, before a claimant may proceed with his claim.

pairment were not more probably the result of causes other than silica exposure revealed by the exposed person's occupational, exposure, medical, and smoking history." *Id.* § 90.004(b)(3). If claiming silica-related lung cancer, the report must include that "inhalation of silica was a substantial contributing factor to that cancer." *Id.* § 90.004(c)(1). The remaining provisions of section 90.004 provide as follows:

(d) If the claimant is asserting a claim for any disease other than silicosis and lung cancer alleged to be related to exposure to silica, the report required by Subsection (a) must also verify that the physician has diagnosed the exposed person with a disease other than silicosis or silica-related lung cancer and has concluded that the exposed person's disease is not more probably the result of causes other than silica exposure.

(e) The detailed occupational and exposure history required by Subsection (a)(1)(B) must describe:

(1) the exposed person's principal employments and state whether the exposed person was exposed to airborne contaminants, including silica and other dusts that can cause pulmonary impairment; and

(2) the nature, duration, and frequency of the exposed person's exposure to airborne contaminants, including silica and other dusts that can cause pulmonary impairment.

*Id.* § 90.004(d),(e). Thus, a report under section 90.004 for any silica-related injury requires a defined level of causation between the claimant's exposure and his illness; while perhaps not a *direct* causative relationship, it is at least one blurring the line between substance and procedure. Indeed, even GSF states "[t]he line be-

tween 'substance' and 'procedure' must be drawn more finely" in this case than others and, at one point, refers to the doctor's report under chapter 90 as a "causation report."

Likening chapter 90's report requirements to Texas's Rule of Evidence 702, GSF argues that Lopez will be required to establish the reliability of his medical experts and meet normal standards of proof even if the case proceeds in 55th District Court. GSF's argument suggests that transfer to an MDL pretrial court would not alter Lopez's obligation with regard to medical reports or reliability of experts.

### 4. Other Case Law

Both parties rely on *Norfolk S. Ry. Co. v. Bogle,* 166 Ohio App.3d 449, 850 N.E.2d 1281 (2006), a case similar to the facts before us.[11] In *Norfolk,* the plaintiffs filed claims for injuries caused by occupational exposure to asbestos. *See id.* at 1283. The trial court concluded that the state's law, House Bill 292, a statute similar to chapter 90, was preempted by the FELA and/or the Locomotive Boiler Inspection Act ("LBIA"). *See id.* at 1283, 1286. After setting out the principles of preemption and examining the report requirements of H.B. 292, the Ohio appellate court stated:

We hold that this requirement would 'gnaw' at the FELA/LBIA claimants' substantive rights to assert a cause of action under federal law in a state court. FELA claimants would essentially be indefinitely precluded from asserting their federal rights until they complied with these requirements. This would not further Congress's intent of creating 'uniformity throughout the Union with respect to railroads' financial responsibility for injuries to their employees.'

---

11. The case was accepted for appeal by the Ohio Supreme Court, 852 N.E.2d 1213, on

August 23, 2006.

*Id.* at 1289 (quoting *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490, 493, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980)). This is the reasoning expressed by Lopez.

GSF argues that *Bogle* is instructive because the features of Ohio's law are not an issue in this case. GSF claims that H.B. 292 is more harsh than chapter 90, because the plaintiff's claim under H.B. 292 is dismissed without prejudice, and "[t]hus, Ohio simply does not permit asbestos plaintiffs with minor injuries to maintain a lawsuit." However, under chapter 90, assuming the pre-September 1, 2003 plaintiff does not meet the report requirements, the result is that his suit languishes in the MDL pre-trial court, precluding—or, at least, delaying—pursuit of his federal remedies. *See* Tex. Civ. Prac. & Rem. Code Ann. § 90.010(d),(f)-(h).

GSF also cites *American Dredging Company v. Miller* as directly on point. *See* 510 U.S. at 445–46, 114 S.Ct. 981. In that case, the defendants had argued that the forum non conveniens defense available to them under federal law was not available under Louisiana's statute, and, therefore, Louisiana's law was preempted. *Id.* at 450–51, 114 S.Ct. 981. The Court examined whether the forum non conveniens doctrine "is either a 'characteristic feature' of admiralty or a doctrine whose uniform application is necessary to maintain the 'proper harmony' of maritime law." *Id.* at 447, 114 S.Ct. 981. It concluded that the doctrine neither originated in admiralty law nor had exclusive application there; consequently, Louisiana's statute did not "work material prejudice to a characteristic feature of the general mari-

time law," and was not preempted. *Id.* at 450, 114 S.Ct. 981.[12]

■ *American Dredging* is inapposite to the subject case. "The Jones Act has the effect of bringing into the maritime law ... all appropriate statutes relating to employers' liability for personal injury or death" for the benefit of seamen. *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278, 282, 53 S.Ct. 159, 77 L.Ed. 302 (1932). Thus, the Jones Act claim here is not comparable to a procedural doctrine. Uniformity in the application of federal law plays a larger role in the preemption analysis when an unseaworthiness claim is involved. *See Yamaha,* 516 U.S. at 211, 116 S.Ct. 619.

In short, GSF's argument rests on the conclusion that section 90.010(b) is procedural and can be construed apart from chapter 90's remaining provisions—in fact, from other provisions in that section. We disagree with GSF that section 90.010(b) is merely procedural and susceptible to segregation from other chapter 90 provisions. Section 90.010(b) is an integral part of the larger MDL design and cannot be isolated from it. Even so, by applying only section 90.010(b), Lopez is precluded from pursuing his rights under the Jones Act. Whether procedural or substantive, chapter 90 is preempted by federal law. *See Gade,* 505 U.S. at 98, 112 S.Ct. 2374; *Felder,* 487 U.S. at 138, 108 S.Ct. 2302.

## CONCLUSION

Because we conclude that application of chapter 90's provisions to Lopez's Jones Act claims interferes with or restricts his remedies under the federal statute, wheth-

---

**12.** The Court also noted the disparity within its decisions concerning state regulations and maritime law, but decided that where those boundaries may lie was not a question it had to decide in that case. *Id.* at 453, 114 S.Ct. 981. Instead, the Court concluded that the doctrine was procedural rather than substantive; as such, its application would not produce uniform results, and the doctrine under federal law was not applicable to the states. *Id.* at 457, 114 S.Ct. 981.

er substantive or procedural, the state law is preempted. Accordingly, we deny GSF's petition for writ of mandamus.